**UNITED STATES of America,**
**Plaintiff/Appellee,**

v.

**Albert MARCHINI,**
**Defendant/Appellant.**

No. 84–1279.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 16, 1986.

Decided Aug. 18, 1986.

Stanley W. Parry, Las Vegas, Nev., for plaintiff/appellee.

Albert A. Newton, Law Offices of Michael T. Kenney, Santa Ana, Cal., for defendant/appellant.

Before WALLACE, FARRIS and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Albert Marchini appeals his conviction on fifteen counts of violating 26 U.S.C. § 7206(1) (1982), which proscribes the willful making and subscribing of any tax return, statement, or other document which the maker does not believe to be true and correct. Marchini raises the following issues on appeal: (1) Did the district court (a) abuse its discretion or (b) violate appellant's right to confrontation by admitting under Fed.R.Evid. 804(b)(5) grand jury testimony of the appellant's wife after she invoked her spousal and marital privileges not to testify against her husband? (2) Did a guilty verdict on count XIII violate the Due Process Clause of the Fifth Amendment in light of an arguably inconsistent verdict of acquittal on count I? (3) Did the district court abuse its discretion by admitting the testimony and summary exhibit of the government's "expert summary witness"? (4) Was the jury's finding of sufficient evidence to establish that appellant willfully and knowingly failed to report cash wages clearly erroneous? (5) In light of appellant's failure to object, was it plain error for the district court to give an *Allen* instruction? (6) Has appellant established that the district court abused its discretion by denying four pretrial motions? We address these issues seriatum, and affirm.

## FACTS

Albert Marchini was the owner and operator of Marchini Construction Company, Inc., a Las Vegas, Nevada corporation, from 1968 to late 1980. Marchini employed between 100 and 300 construction employees at any given time, a bookkeeper, and a general office secretary/payroll clerk (Kathleen Anne Snyder, who married Marchini in 1983). He admits that he regularly paid his employees' weekly wages partially by check and partially by cash. He also admits that he did not report the cash wages on his Employer's Quarterly Federal Tax Return Form 941 or on his Employer's Annual Federal Unemployment Tax Return Form 940. His defense is that he believed it was the responsibility of the employees to report wages paid by cash. He did not report the cash wages he paid to himself, however.

After a prolonged investigation by the Justice Department and a grand jury hearing, the grand jury charged Marchini with twelve counts (I–XII) of willfully and knowingly making and subscribing a United States Employer's Quarterly Federal Tax Return Form 941, substantially underreporting total wages subject to withholding. Each count corresponded to a calendar year quarter beginning with the fourth quarter of 1977 and continuing through the third quarter of 1980. He was also charged with four counts (XIII–XVI) of willfully and knowingly making and subscribing a United States Employer's Annual Federal Unemployment Tax Return Form 940, substantially underreporting total taxable wages. Each count corresponded to a calendar year, 1977 through 1980. All sixteen counts charged him with violation of 26 U.S.C. § 7206(1). The total amount alleged to have been underreported was between one and one-and-one-half million dollars.

Marchini was tried by jury on July 16–19, 1984. He was found not guilty on count I and guilty on all remaining fifteen counts. He was sentenced to two years imprisonment on count II, with imprisonment suspended on counts III–XVI, and a special five year probationary period was imposed to begin after his release from prison.

## ANALYSIS

### I. Grand Jury Testimony

At the grand jury proceedings conducted June 22, 1982, Marchini's secretary, Kathleen Snyder, testified concerning her duties and various office and payroll procedures of Marchini Construction Company. She subsequently married Marchini in February 1983. During Marchini's July 1984 trial, she was called as a witness by the prosecution, and she invoked her spousal and marital privileges not to testify against her husband.

The district court held a hearing to determine whether her grand jury testimony could be admitted under Fed.R.Evid. 804(b)(5), and without violating Marchini's confrontation rights. The district court ruled that she was "unavailable" as a witness within the meaning of Rule 804. The court set forth its detailed analysis and ruled that her testimony was admissible under Rule 804(b)(5). Further, the court ruled that no confrontation violation resulted. Portions of her testimony were read to the jury. Marchini argues that the admission of her grand jury testimony was both an abuse of discretion under Rule 804(b)(5) and a violation of his right to confront witnesses against him.

### A. Fed.R.Evid. 804(b)(5)

■ "The district court's decision to admit evidence is reviewed for an abuse of discretion." *United States v. Winn,* 767 F.2d 527, 529 (9th Cir.1985). Rule 804(b)(5) provides for the admission of statements which otherwise would be hearsay if they have circumstantial guarantees of trustworthiness equivalent to the other hearsay exceptions and if the trial court determines (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will

be served by admission of the statement into evidence.

The admissibility of grand jury testimony under this exception has not been addressed by this circuit, but it has been the subject of a number of opinions in other circuits. There appears to be general agreement that such testimony can be admitted under Rule 804(b)(5) in proper circumstances, but the circuits differ as to the precise terms of its admission. *Garner v. United States,* 439 U.S. 936, 939, 99 S.Ct. 333, 335, 58 L.Ed.2d 333 (Stewart, J., dissenting from denial of cert. to 574 F.2d 1141 (4th Cir.1978)); *United States v. Barlow,* 693 F.2d 954, 960–63 (6th Cir.1982) (discussing cases), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983); *see, e.g., United States v. Boulahanis,* 677 F.2d 586 (7th Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982); *United States v. West,* 574 F.2d 1131 (4th Cir.1978); *United States v. Garner,* 574 F.2d 1141 (4th Cir.), *cert. denied,* 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978); *United States v. Carlson,* 547 F.2d 1346 (8th Cir.1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977); *cf. United States v. Thevis,* 665 F.2d 616 (5th Cir.) (avoiding need to determine whether grand jury testimony ever meets reliability standards of Rule 804(b)(5) because testimony admissible on waiver grounds), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982); *United States v. Gonzales,* 559 F.2d 1271 (5th Cir.1977) (grand jury testimony inadmissible under Rule 804(b)(5) because it lacked "equivalent guarantees of trustworthiness" under the facts of case, distinguishing *United States v. Carlson).*

In *United States v. Barlow,* the Sixth Circuit was presented with a situation strikingly similar to this case. There the court ruled that the admission of the grand jury testimony of defendant's friend was permissible under Rule 804(b)(5), notwithstanding her subsequent marriage to defendant prior to trial and her assertion of her marital privileges. 693 F.2d at 963. The court extensively analyzed the cases from other circuits, and established the following approach, which we adopt.

First, the district court must ascertain whether the witness is "unavailable" within the meaning of the rule. The court held that the assertion of a marital privilege where the marriage was not a sham rendered the witness unavailable. 693 F.2d at 961–62.

Second, the trial court must determine whether the substance of the grand jury testimony possesses "circumstantial guarantees of trustworthiness" equivalent to other exceptions included in Rule 804.

In making this determination the trial court should consider the declarant's relationship with both the defendant and the government, the declarant's motivation to testify before the grand jury, the extent to which the testimony reflects the declarant's personal knowledge, whether the declarant has ever recanted the testimony, and the existence of corroborating evidence available for cross-examination.

*Id.* at 962.

"Finally, other factors which have no direct bearing on 'circumstantial guarantees of trustworthiness' may be considered to determine whether the 'purposes of [the rules of evidence] and the interests of justice will best be served' by the admission of grand jury testimony." *Id.* (quoting Fed.R. Evid. 804(b)(5)(C)) (brackets by the court). For example, the court considered as an appropriate factor the defendant's role in marrying the witness and thus making her unavailable, even though the marriage was bona fide. *Id.*

Another factor to be considered is the subject matter of the evidence. If the testimony is direct evidence of guilt or critical proof of guilt, other factors, such as corroboration, must weigh heavily in favor of admissibility. On the other hand, if the evidence goes to a collateral matter or is circumstantial or cumulative evidence, the other factors need not be as strong. *Id.* at 962–63.

After ruling that the witness was unavailable, the district court in this case specifically found that the grand jury testimony possessed clear indicia of trustworthiness. The court found that "[a]ll of her testimony is confirmed by every witness who has testified in this case, including the banker." Further, her testimony was corroborated by the testimony of her husband, appellant herein. The court recited the following factors to support its decision: there was no indicium of an attempt to inculpate Marchini, no motive was shown for her to distort the truth and falsely inculpate him, and if anything, her testimony reflected efforts to exculpate him; the witness was under oath and represented by counsel; her testimony related strictly to facts within her observation and personal knowledge; she never recanted her testimony; and finally, her marriage to Marchini was the reason that the witness was unavailable, though the court stressed that this factor did not carry much weight. We approve of the district court's analysis and hold that it did not abuse its discretion.

Marchini also argues that Rule 804(b)(5)'s other requirements are not met. He contends that Kathleen Snyder's testimony was not more probative on any point for which it was offered than any other evidence which the government could have procured with reasonable efforts. The government asserts that because she was the only bookkeeper for Marchini Construction Company, and because she cashed several of the spurious supplier checks at Marchini's request, there was no better evidence concerning certain office procedures. Although the importance of the substance of her testimony was cumulative, we agree that her testimony was unique as she was the only person that could establish the link between the drafting of the supplier checks and their conversion to cash which demonstrated Marchini's guilt.

We therefore hold that the district court properly considered all relevant factors in concluding that the grand jury testimony possessed sufficient guarantees of trustworthiness, and did not abuse its discretion in admitting that testimony.

## B. Confrontation Clause

Marchini also maintains that the admission of the grand jury testimony violated his Sixth Amendment right to be confronted with the witnesses against him.

In *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court permitted the admission of a transcript of a witness's preliminary hearing testimony at the defendant's trial where the witness was unavailable. The Court set forth a two-part analysis. First, the Confrontation Clause requires that the hearsay declarant be unavailable. Second, the statements must possess "adequate 'indicia of reliability.'" 448 U.S. at 66, 100 S.Ct. at 2539. "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Id.*

In *Barlow,* the Sixth Circuit held that because Rule 804(b)(5) is not a "firmly rooted hearsay exception," reliability may not be inferred merely on the basis that evidence falls within the Rule. 693 F.2d at 964 (footnote omitted). We agree. We also agree that the Sixth Circuit was correct in refusing to equate the "circumstantial guarantees of trustworthiness" required by Rule 804(b)(5) with "particularized guarantees of trustworthiness" mandated by *Roberts,* instead adopting a case-by-case analysis. *Id.* The court observed that the purpose of the Confrontation Clause is to "'advance a practical concern for the accuracy of the truth determining process in criminal trials by assuring that the "trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement."'" *Id.* (quoting *Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970) (quoting *California v. Green,* 399 U.S. 149, 161, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489 (1970) (brackets by the Court)).

The court held that the admission of the grand jury testimony under the facts of *Barlow* did not violate the defendant's

right to confrontation. The statements of the witness were of past fact, within her personal knowledge, and were corroborated by other evidence at trial. *Barlow,* 693 F.2d at 965. This is exactly the case here. The only difference is that in *Barlow,* the witness had been granted immunity at the grand jury hearing. The district court in this case found that there was no indication of a motive or attempt to inculpate Marchini. Nor did the witness seek immunity. We also observe that in asserting the marital privilege the witness was acting in cooperation with Marchini. It was Marchini's defense counsel that discussed the privilege with Mrs. Marchini and represented to the court that she would invoke her privilege.

We hold that in cases where a witness-spouse is unavailable due to the invocation of a bona fide marital privilege, the introduction of that witness's grand jury testimony in the defendant-spouse's trial does not violate the Confrontation Clause provided there are adequate indicia of reliability characterized by particularized guarantees of trustworthiness. We hold that such is the case before us, and that Marchini's Sixth Amendment rights were not violated by the introduction of the grand jury testimony of Kathleen Snyder. We emphasize, however, that our holding today is a narrow one, and is not to be construed to permit the introduction of all grand jury testimony whenever the witness is unavailable.

## II. Due Process

■ Marchini contends that because he was found not guilty on count I (willfully and knowingly making false employer's quarterly tax return for fourth quarter of 1977) and guilty on count XIII (willfully and knowingly making false employer's annual unemployment tax return for calendar year 1977), these two verdicts are inconsistent, devoid of any rational basis, and therefore violative of his right to due process. Marchini relies on *United States v. Duz-Mor Diagnostic Laboratory, Inc.,* 650 F.2d 223 (9th Cir.1981), and other coconspirator cases for the proposition that inconsistent verdicts must be supported by a rational basis.

As a general rule, inconsistent verdicts may stand, even when a conviction is rationally incompatible with an acquittal, provided there is sufficient evidence to support the guilty verdict. *United States v. Birges,* 723 F.2d 666, 673 (9th Cir.), *cert. denied,* 466 U.S. 943, 104 S.Ct. 1926, 80 L.Ed.2d 472 (1984). *Duz-Mor* is inapposite because it sets forth a limited exception to the general rule. *Duz-Mor* held that a conviction of one defendant and acquittal of the other when the only evidence of culpability applies equally to both may violate due process unless there is an articulation of a rational basis for dissimilar treatment. 650 F.2d at 225–27.

■ The government argues that the jury could have believed that Marchini did not willfully and knowingly make a false tax return as to the last quarter because Marchini believed that the general contractor for a Hawaiian project was responsible for making the reports. The jury could have believed Marchini made knowing false reports during other portions of the year, however, because evidence was introduced to show that cash wages had been paid but not reported during 1977. We hold that substantial evidence supports the jury's verdict on count XIII.

## III. Expert Summary Witness

The court permitted IRS Agent Olsen to testify as an "expert summary witness" based upon his having heard the testimony of previous witnesses and having reviewed the government's exhibits. The court also admitted the government's summary exhibit prepared by Agent Olsen and used during Olsen's testimony. Olsen testified that it was his conclusion that Marchini had omitted wages from Forms 941 and 940 during the time periods involved in the case. He explained that his calculations of the amount of wages underreported were based upon his doubling the amounts of payroll that Marchini paid by check, thus assuming that Marchini paid fifty percent of his wages by check and fifty percent by cash.

Marchini contends that Olsen's testimony usurped the fact-finding function of the

jury, and that his testimony and the admission of the summary exhibit constitute constitutional error requiring reversal.

■ We review the district court's admission of summary exhibits and testimony of expert witnesses for an abuse of discretion. *United States v. Harenberg,* 732 F.2d 1507, 1513–14 (10th Cir.1984). In *Harenberg,* the Tenth Circuit approved the use of summary witness testimony where the IRS agent testified that his summary was based upon the evidence adduced at trial, he was subjected to a thorough voir-dire on the summary before it was introduced, and thoroughly cross-examined about his testimony after it was admitted. *Id.* at 1514. *Accord United States v. Genser,* 582 F.2d 292, 298–99 (3d Cir.1978); *United States v. Schafer,* 580 F.2d 774, 778 (5th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978).

■ In this case, Agent Olsen was qualified as an expert. His calculations were based upon the evidence adduced at trial. He was cross-examined by the defendant as to the basis of his testimony. Marchini testified at his trial that it was a "fair assumption" that his standard payroll procedure was to pay fifty percent by check and fifty percent by cash. For these reasons, we hold that the district court did not abuse its discretion in admitting the summary testimony of the government's expert witness and his summary chart to assist the jury in understanding this tax case.

## IV. Motion for Acquittal for Insufficient Evidence

Marchini next contends that the district court erred in failing to grant his motion for acquittal brought at the close of the government's case in chief, based on insufficient evidence to support a jury verdict of willful and knowing underreporting of income.

The test for sufficiency of the evidence is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *United States v. Marabelles,* 724 F.2d 1374, 1377 (9th Cir.1984). "The findings of the trier of fact will not be set aside unless clearly erroneous." *United States v. Anderson,* 642 F.2d 281, 285 (9th Cir.1981).

■ Willfulness in filing a false tax return under section 7206(1) requires a showing of specific wrongful intent to avoid a known legal duty. *Marabelles,* 724 F.2d at 1379. Willfulness may be inferred from all the facts and circumstances of a defendant's conduct. *Id.* For example, willfulness may be inferred from a consistent pattern of underreporting of large amounts of income, *United States v. Gardner,* 611 F.2d 770, 776 (9th Cir.1980), from the use of false names and surreptitious reliance upon cash, *United States v. Holladay,* 566 F.2d 1018, 1020 (5th Cir.), *cert. denied,* 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978), and from the defendant's attitude toward the reporting and payment of taxes generally, *United States v. O'Connor,* 433 F.2d 752, 754 (1st Cir. 1970), *cert. denied,* 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971).

■ The evidence adduced showed that Marchini made a statement to his accountant that he did not want to file with the IRS and would not file if he could get away with it. The evidence showed and Marchini admitted that he created and cashed spurious supplier checks from 1977 to 1980, forged the first endorsement, and had a member of his office cash the check at a friendly bank. He then used this cash along with payroll checks to pay wages, and he did not report the cash wages paid to his employees or to himself. From this evidence, the jury could reasonably have inferred Marchini willfully underreported cash wages. We hold that the district court did not err in denying Marchini's motion for acquittal.

## V. The *Allen* Instruction

After the jurors had deliberated for approximately four hours and forty minutes, they sent a note to the judge indicating

that they were deadlocked after taking four written ballots. Without objection by either party, indeed, having incorporated a modification in the proposed instruction at Marchini's request, the judge gave a so-called *"Allen"* instruction which encouraged the members of the jury to reconsider their positions and the evidence with proper deference to the opinions of the majority. The court emphasized that jurors should not, however, surrender their honest convictions simply because other jurors differed. The court prefaced its instruction with a comment that the trial "has been expensive in time and effort and in money" to both parties, and there was no reason to believe that another trial would produce any better evidence, or that another jury would be any more competent or conscientious in making a decision.

For the first time on appeal, Marchini objects that the giving of this instruction was premature, coercive, too lengthy, and plainly erroneous. Where a defendant does not object to an instruction, he must establish that the instruction constituted plain error in order to obtain a reversal of a jury verdict. *United States v. Bagby*, 451 F.2d 920, 927 (9th Cir.1971); Fed.R.Crim.P. 52(b). While we have "long recognized that injection of fiscal concerns into jury deliberations has potential for abuse," *United States v. Mason*, 658 F.2d 1263, 1267 (9th Cir.1981) (citing *Peterson v. United States*, 213 F. 920 (9th Cir.1914)), we have upheld this type of *Allen* instruction. *United States v. Seawell*, 583 F.2d 416, 417–18 (9th Cir.) (virtually identical *Allen* instruction, footnote 2; citing cases, footnote 3), *cert. denied*, 439 U.S. 991, 99 S.Ct. 591, 58 L.Ed.2d 666 (1978); *see also United States v. Arbelaez*, 719 F.2d 1453, 1461 (9th Cir.1983) (upholding *Allen* charge), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984). While a more difficult question would have been raised had an objection been made, we hold that the instruction did not constitute plain error.

### VI. Pretrial Motions

Finally, Marchini contends that the district court erred by denying four pretrial motions. He makes no specific assignment of error, but instead "directs this Court to the points and authorities incorporated within each of the motions in question. See, in particular, EOR 26–169, of the Excerpt of Record. The briefing incorporated therein ... demonstrates that the District Court erred in its denials of the requests therein." Rule 13(i) of the Rules of the United States Court of Appeals for the Ninth Circuit provides in part that "[p]arties may not avoid the page limitations of Rule 28(g) of the Federal Rules of Appellate Procedure or the requirements of this rule by incorporating by reference memoranda submitted to the district court ... from which the appeal is taken." We find that Marchini's pretrial motions arguments violate this rule, and thus will not be considered.

### CONCLUSION

For the reasons given in this opinion, Marchini's conviction on all counts is

AFFIRMED.