UNITED STATES of America, Plaintiff,

v.

Andres COLON–MIRANDA (03); Luis Rosario–Rodriguez (39); Richard Rosario–Rodriguez (41); Defendants.

No. CR. 95–029(JAF).

United States District Court,
D. Puerto Rico.

Nov. 24, 1997.

See also 992 F.Supp. 86.

John M. Katko, Trial Atty., San Juan, PR, Theresa Van Vliet, Chief, Narcotic & Dangerous Drug Section, Criminal Div., U.S.

Dept. of Justice, Washington, DC, for Plaintiff.

Luis Guzman–Dupont, for Colón–Miranda.

Lydia Lizarribar–Buxo, San Juan, PR, for Richard Rosario–Rodriguez.

Miriam Ramos–Grateroles, Bayamon, PR, for Luis Rosario–Rodríguez.

## OPINION AND ORDER

FUSTE, District Judge.

Defendants Andrés Colón–Miranda, Richard Rosario–Rodríguez, and Luis Rosario–Rodrígues each oppose the government's notice of its intention to introduce the May 24, 1994, statement of unavailable declarant Rafael Cotto–Fuentes. *See Docket Documents Nos. 1835, 1847, and 1851.*

## I.

### Background

On or about April 13, 1994, local authorities arrested Rafael Cotto–Fuentes, codefendant José Madera–Meléndez, and several others, for the murder of José Cruz–Rodríguez. Following his arrest, Cotto–Fuentes began cooperating with federal authorities, providing details concerning the Santiago–Lugo drug organization. The government alleges that on May 20, 1994, defendant Andrés Colón–Miranda and others attempted to kill Rafael Cotto–Fuentes to prevent his further cooperation with the government. *See* Counts 59–61 of the Third Superseding Indictment, *Docket Document No. 1676.* The government alleges that Cotto–Fuentes, wounded in the attack, fled to a police station and told a Puerto Rico police officer that his assailants were Raúl Ortiz–Miranda, Angel Andrades–Marrero, and codefendant Andrés Colón–Miranda. Four days later, on May 24, 1994, Cotto–Fuentes signed an affidavit to this effect. *See Docket Document No. 1835. Exh. 1.* The government alleges that on June 22, 1994, codefendants Andrés Colón–Miranda and José Rivera–Meléndez intentionally killed Cotto–Fuentes to prevent him from further cooperating with the government. See Counts 62–64 of the Third Superseding Indictment, *Docket Document No. 1676.*

Since declarant Rafael Cotto–Fuentes is dead, he is obviously unavailable to testify. *United States v. Thevis,* 665 F.2d 616 n. 3 (5th Cir.), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). The government seeks to use declarant's May 24, 1994, written statement to police. Defendants object to the use of this statement as a violation of the Confrontation Clause and as hearsay not within any exception.

## II.

### Confrontation Clause

■ The Sixth Amendment Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This guarantee includes the right to cross-examine witnesses. *Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). Although the right to confrontation is rooted in the Constitution and integral to the justice process, the defendant may lose it through misconduct. *See e.g., Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 1060–61, 25 L.Ed.2d 353 (1970) (holding that defendant's disruptive behavior warranted his removal from the courtroom and the loss of his confrontation right). The First Circuit has articulated this principle as follows:

> [W]hen a person who eventually emerges as a defendant (1) causes a potential witness' unavailability (2) by a wrongful act (3) undertaken with the intention of preventing the potential witness from testifying at a future trial, then the defendant waives his right to object on confrontation grounds to the admission of the unavailable declarant's out-of-court statements at trial.

*United States v. Houlihan,* 92 F.3d 1271, 1280 (1st Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 963, 136 L.Ed.2d 849 (1997).

■ Fundamental principles of fairness compel the conclusion that courts should not allow a defendant to reap the fruit of his wrongdoing when he silences a witness. *U.S. v. White,* 116 F.3d 903, 911 (D.C.Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 390, 139 L.Ed.2d 305 (1997). Instead, courts must

wipe out any such incentive by not allowing the defendant to complain about losing the chance to cross-examine the very witness whose cross-examination he made impossible. *Id.* We, therefore, hold that a "defendant who wrongfully procures the absence of a witness or potential witness may not assert confrontation rights as to that witness." *Id.,* (citing *United States v. Houlihan,* 92 F.3d 1271, 1279 (1st Cir.1996) (murder); *United States v. Aguiar,* 975 F.2d 45, 47 (2d Cir.1992) (threats); *United States v. Rouco,* 765 F.2d 983, 995 (11th Cir.1985) (murder), *cert. denied,* 475 U.S. 1124, 106 S.Ct. 1646, 90 L.Ed.2d 190 (1986); *Steele v. Taylor,* 684 F.2d 1193, 1202 (6th Cir.1982) (defendant pimp influenced prostitute to refuse to testify), *cert. denied,* 460 U.S. 1053, 103 S.Ct. 1501, 1502, 75 L.Ed.2d 932 (1983); *United States v. Thevis,* 665 F.2d 616, 630 (5th Cir. 1982) (murder); *United States v. Balano,* 618 F.2d 624, 628 (10th Cir.1979) (threat), *cert. denied,* 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980); *United States v. Carlson,* 547 F.2d 1346, 1360 (8th Cir.1976) (threat), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977)).

■ In order for a defendant to waive his right to confrontation, the government must prove by a preponderance of the evidence the predicate facts of the wrongdoing which procured the witness' unavailability. *Houlihan,* 92 F.3d at 1280. For purposes of this motion, we assume that the government will prove by a preponderance of the evidence that defendants murdered Cotto–Fuentes. If the necessary foundation is established, defendants waived their right to confrontation regarding Cotto–Fuentes' declaration.

### III.

### *Hearsay*

■ We additionally find that declarant Cotto–Fuentes' statement falls within an ex-
ception to the rule against hearsay. *See* Fed.R.Evid. 802. The catch-all exception to the rule against admitting hearsay, Fed. R.Evid. 804(b)(5), provides that a statement that is not specifically covered by any other hearsay exception may nevertheless be a hearsay exception if

> [t]he court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Fed.R.Evid. 804(b)(5). Thus, the court must first determine that the statement is a material fact, is probative on the point for which it is offered, and that justice will be best served by its admission. *United States v. Panzardi–Lespier,* 918 F.2d 313, 316 (1st Cir.1990). However, a threshold requirement of Rule 804(b)(5) is that the statement be "accompanied by 'circumstantial guarantees of trustworthiness.'" *United States v. Zannino,* 895 F.2d 1, 7 (1st Cir.), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

The majority view, expressed in *United States v. Bailey,* 581 F.2d 341, 349 (3d Cir. 1978), states that "the trustworthiness of a statement should be analyzed by evaluating not only the facts corroborating the veracity of the statement, but also the circumstances in which the declarant made the statement and the incentive he had to speak truthfully or falsely." *Id.*[1] For example, in *United States v. Medico,* 557 F.2d 309 (2d Cir.), *cert. denied,* 434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d 480 (1977), the Second Circuit allowed the admission of an unknown bystand-

---

1. A stricter minority viewpoint is found in *Huff v. White Motor Corp.,* 609 F.2d 286 (7th Cir.1979), which stated that "the probability that the statement is true, as shown by corroborative evidence, is not, we think, a consideration relevant to its admissibility under the residual exception to the hearsay rule." *Id.* at 293. However, the Seventh Circuit has declined to follow this rule in several cases. *See e.g., United States v. Vretta,* 790 F.2d 651, 659 (7th Cir.) (implicitly acknowl-
edging corroborating evidence as relevant to the determination of trustworthiness), *cert. denied,* 479 U.S. 851, 107 S.Ct. 179, 93 L.Ed.2d 115 (1986); *United States v. Boulahanis,* 677 F.2d 586, 588 (7th Cir.), (allowing tape of conversation and testimony of eyewitnesses to corroborate admission of grand jury testimony), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982).

er's report of the license plate of a fleeing automobile used by escaping bank robbers based, in part, on the reliability of the hearsay. In assessing that reliability, the court noted the opportunity of the declarants to observe, the amount of time for the information to be relayed, and the potential for misidentification or fabrication. *Id.* In *United States v. Doerr*, 886 F.2d 944 (7th Cir. 1989), the court looked at a series of circumstances which guaranteed the statement's veracity and trustworthiness: (1) the testimony was "given under oath and subject to a penalty for perjury;" (2) there was "no indication that [the declarant] was pressured to testify;" (3) the declarant had testified voluntarily, and had not be granted immunity (4) the statement was based on the declarant's own personal knowledge; (5) there was no incentive to manufacture false testimony; and (6) certain aspects of declarant's testimony were corroborated by other evidence introduced at trial. *Id.* at 956.

The First Circuit similarly looks to circumstantial guarantees of trustworthiness and evidence of reliability. In *United States v. Zannino*, 895 F.2d 1, 6–7 (1st Cir.1990), the court found the statement trustworthy because it had been subject to cross-examination, was given under oath, was "not implausible," and was corroborated. In *Brookover v. Mary Hitchcock Memorial Hosp.*, 893 F.2d 411 (1st Cir.1990), the court stated that despite the fact that declarant's statement implicating the hospital's negligence in his injury was self-interested, there was a "strong, indeed almost irrefutable, indicia of reliability" in corroboration of the statement by a nurse's notes.

Looking to the circumstances surrounding declarant Rafael Cotto–Fuentes' statement, we find sufficient indicia of reliability and trustworthiness to allow this matter to proceed. Of course, the government must establish the necessary foundation. It is alleged that Cotto–Fuentes gave his May 24, 1994, statement to police voluntarily. Declarant came to the police following the first alleged attempt on his life on May 20, 1994, of his own free will. There is no indication the police pressured him to make the statement or gave or promised him anything in

return for that statement. The statement was based on declarant's own personal knowledge. The scene declarant described gave him ample opportunity to observe his attackers, as well as their vehicle and license plate number. Moreover, the fact that declarant was eventually killed is corroboration that the life-threatening incident he described took place. Though declarant had previously been arrested and was cooperating with the police and the statement was not given under oath subject to cross-examination, and despite the fact that declarant made the statement four days after the incident, we find that the other circumstances surrounding the statement are sufficient indicia of trustworthiness for purposes of satisfying the Fed.R.Evid. 804(b)(5) requirement.

■ Even if declarant Cotto–Fuentes' statement did not qualify as an exception to hearsay under Fed.R.Evid. 804(b)(5), it would still be admissible hearsay. Like the Confrontation Clause, the hearsay principles "attempt to strike a balance between the government's need for probative evidence and the defendant's stake in testing the government's case through cross-examination." *Houlihan*, 92 F.3d at 1281 (citing *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980)); *see also California v. Green*, 399 U.S. 149, 155, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489 (1970) (finding that "hearsay rules and the Confrontation Clause are generally designed to protect similar values"). Because both principles "are designed to protect against the dangers of using out-of-court declarations as proof, a defendant's actions that make it necessary for the government to resort to such proof should be construed as a forfeiture of the protections afforded under both." *United States v. White*, 116 F.3d at 912.

We find that if the circumstances described here are true, defendants have waived their confrontation right by wrongfully procuring the witness Cotto–Fuentes' unavailability, and, therefore, also waived hearsay objections vis-a-vis that witness. *Houlihan*, 92 F.3d at 1282; *see also, United States v. White*, 116 F.3d at 912; *United States v. Thai*, 29 F.3d 785, 798 (2d Cir.), *cert. denied*, 513 U.S. 977, 115 S.Ct. 456, 130

L.Ed.2d 364 (1994); *United States v. Aguiar,* 975 F.2d 45, 47 (2d Cir.1992).

## IV.

### *Conclusion*

Defendants' motions are accordingly **DENIED,** and declarant Cotto–Fuentes' written statement to police on May 24, 1994, is admissible.

**IT IS SO ORDERED.**